UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

HUA LIN, HENG CHEN,
FEI HU, WEI LIN, ZHEN ZU,
and JIU TAO WANG,
        Plaintiffs,

    v.                                        CASE NO. 3:14-cv-164 (VAB)

W & D ASSOCIATES LLC
*doing business as* KUDETA,
CHRISTINA TAN, DOUG MCSHANE,
ALBERT WONG, ELAINE PI YUN
CHAO, EMILY PI SHIA CHAO,
HERRY DARBI, TERRENCE KUM,
and TOM HO,
        Defendants,

and

W & D ASSOCIATES LLC
*doing business as* KUDETA,
CHRISTINA TAN, DOUG MCSHANE,
ALBERT WONG, ELAINE PI YUN
CHAO, and EMILY PI SHIA CHAO,
        Third-Party Plaintiffs,
    v.

HERRY DARBI,
        Third-Party Defendant.

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs are six former employees of Kudeta Restaurant, a Chinese food restaurant that was located in New Haven, Connecticut. Am. Compl. ¶¶6-17, ECF No. 45. In February 2014,

1

Plaintiffs sued the restaurant's owner, W&D Associates, LLC ("W&D")[1], and five individually named members of W&D, namely Christina Tan, Doug Mcshane, Albert Wong, Elaine Pi Yun Chao ("Elaine Chao"), and Emily Pi Shia Chao ("Emily Chao").  Compl. ¶¶18-23, ECF No. 2.  With the Court's permission, Plaintiffs subsequently amended their Complaint to add three additional members of W&D as Defendants, namely Herry Darbi, Terrence Kum, and Tom Ho.  Am. Compl. ¶¶24-26, ECF No. 45.

Plaintiffs claim that all Defendants collectively failed to pay their wages and did not pay them overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq.*, and Connecticut's wage and hour laws.  Am. Compl. ¶¶41, 50-56, 58-59, 66, ECF No. 45 (citing 29 U.S.C. §207(a)(1); Conn. Gen. Stat. §§31-60, 31-76c).  They also allege that Defendants failed to post notices required by federal and Connecticut law and failed to advise Plaintiffs in writing of the rate of pay, hours of employment, and wage payment schedules, in violation of Connecticut law.  Am. Compl. ¶¶ 43-46, 60, 69-71, ECF No. 45 (citing Conn. Gen. Stat. §§31-66, 31-71f, 31-51ii(a); 29 C.F.R. §516.4[2]).  In addition, Plaintiffs claim that Defendants failed to distribute satisfactory records of Plaintiffs' hours and earnings.  Am. Compl. ¶¶60, 67-68, ECF No. 45 (citing 29 U.S.C. §211(c); Conn. Gen. Stat. §§31-66, 31-13a).  The Complaint alleges that, under both the FLSA and Connecticut wage and hours laws, Defendants are "jointly and severally liable" for this conduct.  Am. Compl. ¶¶62, 74, ECF No. 45.[3]  Based on the same factual allegations, Plaintiffs also assert claims of breach of their employment contracts, breach

---

[1] Plaintiffs have named "W&D Associates, LLC doing business as Kudeta" in the Complaint.  Am. Compl. at Caption, ECF No. 45.

[2] The FLSA authorizes the Administrator of the Department of Labor's Wage and Hour Division to make regulations or rulings interpreting the Act.  *See generally* 29 U.S.C. §204.

[3] Plaintiffs also allege that Defendants willfully violated the FLSA.  Am. Compl. ¶61, ECF No. 45.  To make out a claim of a willful FLSA violation, Plaintiffs must show that their employer "'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'"  *Herman v. RSR Sec. Servs., Ltd.,* 172 F.3d 132, 141 (2d Cir. 1999) (quoting *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988)).

of the implied covenant of good faith and fair dealing in their employment contracts, as well as unjust enrichment and quantum meruit.  *Id.* ¶¶ 72-92.

Currently before the Court is Defendants' Motion for Summary Judgment, ECF No. 41, seeking summary dismissal of all claims against five individually named members of W&D.[4] Defendants contend that the individually named members of W&D cannot be liable for the violations of law alleged in the Complaint because the Plaintiffs have failed to allege or uncover evidence that justifies piercing W&D's corporate veil.  Defs.' Br. 2, ECF No. 41.  Plaintiffs counter that the liability of individually named members of W&D does not depend on piercing the corporate veil, but rather on whether these individuals are employers under the FLSA and Connecticut law.  Opp. Br. 6, ECF No. 43.  The Court believes that both parties have identified law applicable to this case and for the reasons that follow, Defendants' Motion for Summary Judgment, ECF No. 41, is **GRANTED IN PART** and **DENIED IN PART**.

I.   BACKGROUND

W&D was founded as a Connecticut limited liability corporation in 2005 for the purpose of funding and managing Kudeta Restaurant in New Haven, Connecticut.  Darbi Dep. 6:3-11, ECF No. 42; Elaine Chao Dep. 10:15-18, Nov. 10, 2014, ECF No. 43-2 [hereinafter Chao Dep. II].  Kudeta Restaurant opened in 2006.  Chao Dep. II 9:4-5.

W&D was composed of eight members, all of whom invested some amount of money in the corporation at least once to finance the opening and operation of the restaurant.  Darbi Dep. 4:17-5:8, 7:1-4, 7:13-8:19; Chao Dep. II 30:23-31:11.  The founding members were Herry Darbi, Albert Wong, Doug Mcshane, Christina Tan, Elaine Chao, Emily Chao, Terrence Kum, and Tom

---

[4] After this summary judgment motion was filed, Plaintiffs sought and obtained the Court's permission to add three Defendants to the case.  Am. Compl. ¶¶24-26, ECF No. 45; Order dated 9/28/2015, ECF No. 44.  Because Darbi, Kum, and Ho were added as Defendants after the instant Motion for Summary Judgment was filed, this Ruling does not directly adjudicate the claims asserted against them.

Ho. Darbi Dep. 4:17-5:8. The "managing members" were Herry Darbi and Albert Wong. *Id.* at 31:16-18; Chao Dep. II 10:23-11:1. They also were the company's namesakes, with the letters W and D standing for Wong and Darbi respectively. Darbi Dep. 8:23-9:2.

As admitted by the Defendants in their Answer, ECF No. 18, four of the six Plaintiffs worked at Kudeta at various times during 2012 and 2013. Compl. ¶¶9, 11, 15, 17, ECF No. 2; Answer ¶¶9, 11, 15, 17, ECF No. 18.[5] Three of these Plaintiffs worked as chefs, one worked as a "food runner." *Id.* Of the other two Plaintiffs, Hua Lin's dates of employment and role at the restaurant appear to be disputed. Answer ¶7, ECF No. 18. Plaintiffs allege that she was employed as a "manager" but did not actually have managerial responsibilities. Am. Compl. ¶7, ECF No. 45. The remaining Plaintiff, Wei Lin, worked at Kudeta from December 2008 to December 31, 2013 as a chef. Compl. ¶13, ECF No. 2; Answer ¶13, ECF No. 18. Although neither party takes an explicit position in their filings on the timeframe that applies to Plaintiffs' claims, based on the evidence currently before the Court, the broadest applicable time period is from December 2008 to December 31, 2013.

Based on a review of the factual materials provided by both parties at this stage, the evidence indicates that responsibilities at W&D were divided as follows. In the early days of the restaurant's existence, before March 2009, Elaine Chao worked with Herry Darbi to manage the restaurant. Elaine Chao Dep. 33:13-34:20, Oct. 30, 2013, ECF No. 43-2 [hereinafter Chao Dep. I]. Ms. Chao managed the "front of the house," which included the bartending and serving aspects of the business. *Id.* at 33:1-9, 35:19-22. She was responsible for hiring and paying employees who worked in the "front of the house" and reported directly to the W&D members.

---

[5] The Court relies on the allegations in the Complaint that were admitted in the Answer, because the submissions made to the Court relating to the Motion for Summary Judgment do not contain any facts about the timing of the Plaintiffs' employment. *See Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.,* 440 F.3d 571, 578 (2d Cir. 2006) ("Facts admitted in an answer, as in any pleading, are judicial admissions that bind the defendant throughout this litigation.") (citations omitted).

Chao Dep. I 33:13-16, 35:19-25, 61:10-19.  She also purchased inventory for W&D during this time.  Darbi Dep. 32:14-18.  Mr. Darbi managed the kitchen, including the hiring of its employees, and food preparation.  Chao Dep. I 34:1-10, 35:13-18.  According to Elaine Chao, he was also the restaurant's general manager at the time.  *Id.* at 33:13-21.

Ms. Chao stepped out of this managerial role in February 2009 and was no longer involved in the day-to-day management of the restaurant; she did not visit the restaurant regularly and did not hire or fire employees.  Darbi Dep. 33:3-11; Chao Dep. I 34:11-20, 67:5-11.  Ms. Chao testified that after she left, Plaintiff Hua Lin stepped into her role at the front of the house and took a more active role in managing the restaurant with Mr. Darbi, who is her husband.  Chao Dep. I 30:1-10, 32:24-33:6.  Ms. Chao also testified that Steve Garrett, who is not a party to this lawsuit, also worked as a manager of Kudeta until he left in February 2009, the same time that Ms. Chao left.  Chao Dep. II 25:12-26:7.

After Elaine Chao left Kudeta, Mr. Darbi continued as the primary manager of the entire restaurant.  Darbi Dep. 20:16-20.  He testified that he was responsible for "handling" the money, giving employees their paychecks, keeping track of the payments that were made, and the hiring and firing of all staff after Ms. Chao left, including the hiring of a few of the Plaintiffs.  *Id.* at 20:21-23, 22:15-23:1, 26:4-21, 38:9-39:3, 39:25-40:22, 43:10-17, 54:7-8; Chao Dep. I 41:18-23 (noting that all of the handwriting on the checks given to employees belonged to Mr. Darbi).  Ms. Chao also testified that Plaintiff Hua Lin was in charge of hiring and firing the staff after she left.  Chao Dep. I 30:1-10.  Mr. Darbi testified that he did not play a role in determining how much employees were paid, Darbi Dep. 55:2-5, but Elaine Chao indicated that she believed he, along with his wife Plaintiff Hua Lin, determined how much employees were paid.  Chao Dep. I 31:24-32:8, 33:19-21.

5

Throughout the entire time period that Kudeta was open, Albert Wong "managed all the money" for W&D and took in investments from the various members. Darbi Dep. 8:16-20, 10:13-11:6. Mr. Wong and Mr. Darbi were the individuals able to sign for W&D's bank account. Chao Dep. I 48:7-49:6. Mr. Darbi testified that Mr. Wong, however, was not involved in the day-to-day management of the restaurant. Darbi Dep. 31:19-25.

Terrence Kum was the bookkeeper for W&D, who issued paychecks from the company to employees and made bi-weekly visits to the restaurant. *Id.* at 40:3-7, 43:10-11; Chao Dep. I 31:2-16. He also kept track of employee hours with Plaintiff Hua Lin. Chao Dep. I 31:2-5.

For the last few weeks of the restaurant's existence in December 2013, the management structure differed from what has been described above. Mr. Darbi left the restaurant in early December 2013, and Steve Garrett and Elaine Chao handled the day-to-day aspects of the business. Chao Dep. I 16:14-17:6, 70:7-71:23. During this time, Ms. Chao testified that she went into the restaurant "sometimes" "to see what's going on" and to speak to the kitchen staff who only spoke Mandarin. *Id.* at 16:18-17:1.

Aside from the six individuals mentioned above, there is no testimony or evidence before the Court that specifically links by name any of the other individually named members of W&D to daily management of Kudeta Restaurant. There is testimony indicating that decisions impacting the company as a whole, including the decision to pay or not to pay employees and to close the restaurant, were made by all of the members of the company acting together.[6] Chao Dep. I 15:10-19, 17:19-18:5, 64:24-65:12. Both Ms. Chao and Mr. Darbi also testified that W&D's members, who did not play an active role in the day-to-day management of the restaurant, as opposed to those six individuals discussed above, were "passive investors." *Id.* at 76:3-20 (indicating that individuals other than Mr. Wong and Mr. Darbi were "passive

---

[6] The restaurant closed on December 31, 2013 and has not reopened since. Chao Dep. I 18:25-19:4, 19:24.

investors"); Darbi Dep. 30:4-31:12 (identifying Ms. Tan and Mr. Mcshane as "passive investors").

## II. STANDARD

Courts must "grant summary judgment, if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party carries the burden of demonstrating that there is no genuine material dispute of fact by citing to "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000) (citation omitted). A dispute regarding a material fact is "'genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party'" and material if the substantive law governing the case identifies those facts as material. *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quoting *Stuart v. Am. Cyanamid Co.,* 158 F.3d 622, 626 (2d Cir. 1998))); *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In assessing a summary judgment motion, the Court must resolve all ambiguities, including credibility questions, and draw all inferences from the record as a whole in favor of the non-moving party. *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 546 (2d Cir. 2010); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

## III. DISCUSSION

Defendants' Motion for Summary Judgment asks this Court to dismiss all five individually named members of W&D, because these individuals are not personally liable for

7

what, in Defendants' view, are the acts of W&D. Defendants argue that to hold the individually named Defendants liable, Plaintiffs must show that they are entitled to pierce the corporate veil and that they have failed to plead that legal theory or otherwise produce evidence that shows an entitlement to do so. Defs.' Br. 2, ECF No. 41. Plaintiffs counter that to show the five individuals are liable they do not need to show an entitlement to pierce W&D's corporate veil. Opp. Br. 5-6, ECF No. 43. Instead, they argue that they must prove they are "employers" within the meaning of the FLSA and Connecticut's wage and hour laws. *Id.*

The Court agrees that both the law of piercing the corporate veil and the definition of an employer under federal and Connecticut labor laws are relevant to resolving Defendants' motion. The Court will analyze each of the Plaintiffs' claims in turn.

### A. Count One: Fair Labor Standards Act

Congress passed the FLSA to provide certain minimum guarantees to laborers who qualify for its protections, including a subsistence wage, a maximum number of hours worked, and overtime pay. 29 U.S.C. §§202, 206-207; *see also Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 207 (2d Cir. 2015) (The FLSA's "primary remedial purpose [is] to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees.") (citing *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706-07 (1945)). The Act also requires an employer to "make, keep, and preserve" records of employee wages, hours, and conditions of employment and to provide certain notices to employees. 29 U.S.C. §§211(c), 218b; 29 C.F.R. §516.4.

"To be held liable under the FLSA, a person must be an 'employer.'" *Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 139 (2d Cir. 1999). Thus, the relevant inquiry in determining whether FLSA liability is appropriate for an individual officer of a corporation is whether that individual is an employer, not whether plaintiffs may pierce the corporate veil of the employing

8

entity. *See Irizarry v. Catsimatidis,* 722 F.3d 99, 105-12 (2d Cir. 2013) (determining whether a corporation's officer was an employer in assessing whether liability was appropriate under the FLSA); *see also e.g., Samborski v. Linear Abatement Corp.,* No. 96 Civ. 1405(DC), 1999 WL 739543, *3 (S.D.N.Y. Sept. 22, 1999) (noting that "even assuming that the corporate veil should not be pierced in this case" an individual corporate officer may still be liable "in his individual capacity" as an employer under the FLSA). Thus, Defendants' argument that Plaintiffs cannot pierce W&D's corporate veil does not dispose of their FLSA claim.

The FLSA defines employer "broadly as 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" *Herman*, 172 F.3d at 139 (quoting 29 U.S.C. §203(d)). In determining whether an individual or entity is an employer under the FLSA, courts apply the "economic reality" test and look to the "'overarching concern [of] whether the alleged employer possessed the power to control the workers in question.'" *Irizarry*, 722 F.3d at 104, 105 (citation omitted and alteration in the original). The "economic reality test" includes, but is not limited to, the following four inquiries: "'whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.,* 735 F.2d 8, 12 (2d Cir. 1984) (citation omitted); *Zheng v. Liberty Apparel Co. Inc.,* 355 F.3d 61, 71 (2d Cir. 2003) (clarifying that these four factors are not exhaustive).

Satisfying these four *Carter* factors is sufficient but not necessary to finding that a defendant is an employer. *Zheng,* 355 F.3d at 69. Moreover, no single one of these factors is dispositive of whether an individual or entity is an employer; instead, the Court must look to the totality of the circumstances. *Irizarry,* 722 F.3d at 106; *Herman,* 172 F.3d at 139. In addition,

courts also consider whether the purported employer had "operational" or functional control of a company in a manner that relates to the plaintiff's employment. *Zheng,* 355 F.3d at 71; *Irizarry,* 722 F.3d at 107-10.

Courts have construed the definition of employer under the FLSA broadly "in accordance with the [statute's] remedial purpose." *Zheng,* 355 F.3d at 66 (citations omitted); *Falk v. Brennan,* 414 U.S. 190, 195 (1973) (noting the "expansiveness" of the FLSA's definition of employer). Plaintiffs need not show that Defendants "continuous[ly] monitor[ed]" them or "absolute[ly] control[led]" them, instead restricted or occasional direction of their activities can be sufficient. *Herman,* 172 F.3d at 139 (citations omitted). The delegation of employment-related decisions to others, including managers, may also be sufficient to show that an individual was a plaintiff's employer. *Irizarry,* 722 F.3d at 110 ("The statute provides an empty guarantee absent a financial incentive for individuals with control, even in the form of delegated authority, to comply with the law, and courts have continually emphasized the extraordinarily generous interpretation the statute is to be given.").

"Most circuits . . . have acknowledged . . . that a company owner, president, or stockholder must have at least some degree of involvement in the way the company interacts with employees to be a FLSA 'employer.'" *Irizarry,* 722 F.3d at 107. Thus, the Plaintiffs must show that each of the individually named Defendants had some degree of involvement in the management of Plaintiffs' employment. Mere ownership of the business is insufficient to give rise to employer status. *Herman*, 172 F.3d at 141; *Irizarry,* 722 F.3d at 111 ("Ownership, or a stake in a company, is insufficient to establish that an individual is an 'employer' without some involvement in the company's employment of the employees.").

In this case, Plaintiffs have introduced evidence that genuine questions of material fact exist as to whether Albert Wong was an "employer" under the FLSA. The evidence before the Court indicates that Mr. Wong managed all finances of the business, which certainly can be said to impact employees and may meet the third and fourth *Carter* factors. Such control of W&D's finances must have impacted the ability to hire and fire employees and certainly indicates that Mr. Wong exercised control over Mr. Darbi, who controlled the bulk of Kudeta's employees' day-to-day activities during the relevant time period. Thus, Mr. Wong's role may also satisfy the first and second *Carter* factors. Accordingly, Plaintiffs have succeeded in creating a genuine issue of material fact as to whether Mr. Wong qualifies as an employer under the FLSA, and their claims against him may proceed to trial.

With respect to Elaine Chao, Plaintiffs have shown that, before March 2009, Ms. Chao took an active role in managing Kudeta that included the hiring and firing of servers and bartenders, purchasing inventory, and generally managing the "front of the house." However, because none of the Plaintiffs were employed at the front of the house before March 2009, Ms. Chao cannot have exercised control over actual operations in a way that related to Plaintiffs' employment. *See Irizarry,* 722 F.3d at 109 ("[T]o be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment."). Thus, no reasonable juror could conclude, based on her role before March 2009, that Elaine Chao was an employer of the Plaintiffs under the FLSA.

Plaintiffs also have shown that for a brief time period in December 2013, Elaine Chao played some role in the day-to-day operations of the restaurant. She testified that she went into the restaurant periodically and spoke to the kitchen staff during this time. These activities, however, do not speak to any of the *Carter* factors; nor do they show that Ms. Chao exercised

any control over Plaintiffs' employment with respect to schedule, wages, records, or any other employment matters. *See Copantitla v. Fiskardo Estiatorio, Inc.,* 788 F. Supp. 2d 253, 309-10 (S.D.N.Y. 2011) (finding an individual who was a shareholder and visited the restaurant once a week, but did not have any binding authority in matters of hiring, firing or in deciding employee schedules, records or compensation, was not an employer under the FLSA).

Plaintiffs argue that Elaine Chao's testimony "indicates a high degree of awareness of the day-to-day events at Kudeta after 2009, as well as some involvement in most business decisions." Opp. Br. 11, ECF No. 43.  These general allegations alone are insufficient to survive summary judgment, because they do not indicate that she had operational control over any matters related to Plaintiffs' employment. *See cf. Irizarry,* 722 F.3d at 109, 116; *see also Tracy v. NVR, Inc.*, 667 F.Supp.2d 244, 247 (W.D.N.Y. 2009) ("[M]ere boilerplate allegations that [ ] individual[s] meet[ ] the various prongs of the economic reality test stated solely upon information and belief without any supporting details . . . are insufficient to raise plaintiffs' right to relief above a speculative level with respect to th[ose] individual[s'] liability as [ ] employer[s] under the FLSA.").

Plaintiffs also argue that all of the individually named members of W&D should be liable as employers under the FLSA because they "were in regular communication, and made most business decisions as a voting unit." Opp. Br. 10-11, ECF No. 43.  However, they admit that "it is never explicitly stated that these decisions pertained to employment and personnel issues." *Id.* at 11.  Plaintiffs do produce evidence that all of the individually named members voted to determine as a group whether Plaintiffs were to be paid in December 2013.  Chao Dep. I 64:24-65:12.  This example speaks to the third *Carter* factor, the rate and method of payment, which forms a key basis of Plaintiffs' Complaint.  Despite the lack of other evidence indicating how

employment decisions were made at Kudeta, the Court finds that Plaintiffs have demonstrated a genuine question of material fact as to whether, as members of W&D, Elaine Chao, Christina Tan, Doug Mcshane, and Emily Chao were employers under the FLSA, drawing all inferences in Plaintiffs' favor and construing the definition of employer under the FLSA broadly. *See Ansoumana v. Gristede's Operating Corp.,* 255 F. Supp. 2d 184, 192-93 (S.D.N.Y. 2003) (finding that the two "founders, owners, and sole shareholders" of the employing entity who personally oversaw and operated the companies and their agents were employers under the FLSA). Accordingly, Defendants' Motion for Summary Judgment is **DENIED** with respect to Plaintiffs' FLSA claim.

### B. Count Two: Connecticut Wage and Hour Law

The Connecticut minimum wage and hour laws "provide[ ] wage and overtime guarantees similar to the FLSA." *Scott v. Aetna Servs., Inc.,* 210 F.R.D. 261, 263 n.2 (D. Conn. 2002). The relevant Connecticut statutes define employer as an individual or legal entity who "employ[s] any person" or who acts in an employer's interest in relation to employees. *See* Conn. Gen. Stat. §§31-58(d), 31-71a(1). In fleshing out this definition, the Connecticut Supreme Court has "declined to adopt the 'economic reality' test" that applies to the FLSA. *Morales v. Cancun Charlie's Rest.,* No. 3:07-cv-1836 (CFD), 2010 WL 7865081, at *6 (D. Conn. Nov. 23, 2010) (citing *Butler v. Hartford Tech. Inst., Inc.,* 243 Conn. 454, 462 n.8 (1997) (finding that the "economic reality" test addressed "areas of operational control that are irrelevant to the effectuation of [the Connecticut statute]").

Instead, to hold an individual member or officer of a corporation liable as an employer under Connecticut's wage and hour laws, Plaintiffs must produce evidence that raises an inference that the individual Defendants are the "ultimate responsible authorit[ies] to set the hours of employment and to pay wages and [are] the specific cause of the wage violation."

*Butler v. Hartford Tech. Inst., Inc.*, 243 Conn. 454, 463-64 (1997). Because the Connecticut wage and hour laws are remedial in nature, Connecticut courts have "broadly construed the definition of employer." *Morales,* 2010 WL 7865081, at *6 (citing *Butler,* 243 Conn. at 462-64).

Under this standard, Plaintiffs' evidence that the December 2013 decision made by the all of the individually named members of W&D not to pay Plaintiffs raises a reasonable inference that they were ultimately responsible as a group for making decisions about wages, at least in a particular instance. Thus, a genuine question of material fact exists as to whether the five individually named Defendants were employers under Connecticut wage and hour laws. Accordingly, summary judgment must be **DENIED** on this claim.

### C. Counts Three and Four: Contract-Based Claims

Plaintiffs also allege that Defendants breached their employment agreements and the covenant of good faith and fair dealing implicit in those agreements. Am. Compl. ¶¶76-91, ECF No. 45; *see also Habetz v. Condo,* 224 Conn. 231, 238 (1992) ("Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement.") (citations omitted). Defendants have moved for summary judgment on these claims with respect to the individually named Defendants, arguing that Plaintiffs have failed to show that they are entitled to pierce the corporate veil. Defs.' Br. 2, ECF No. 41. In their opposition, Plaintiffs only make arguments about whether the individuals are employers. They contend that the Defendants have misconstrued their claims and that they neither allege nor need to show entitlement to pierce the corporate veil for their claims to survive. Opp. Br. 6, ECF No. 43. The Court disagrees and finds that Plaintiffs must show that they can pierce the corporate veil to sustain claims against the individually named members of W&D for their contract-based claims to survive summary judgment.

Privity is required to maintain a cause of action for breach of contract and for any other claims that arise from that contract, including a claim for breach of the covenant of good faith and fair dealing. *See Resnick v. Sikorsky Aircraft,* 660 F. Supp. 415, 418 (D. Conn. 1987) (noting that privity is an essential element of a breach of contract claim that must be alleged); *see also Buitekant v. Zotos Corp.,* No. CV 940135874S, 1996 WL 456336, at *3 (Conn. Super. Ct. July 29, 1996) (finding that a claim of breach of the covenant of good faith and fair dealing requires a showing of privity because such a covenant "does not extend to nonparties."). Thus, to survive summary judgment, Plaintiffs must show that the Defendants were parties to their employment contracts.

The record indicates that Mr. Darbi or Ms. Chao hired and fired employees. There is no evidence indicating that either of these individuals negotiated or agreed to employment contracts with the Plaintiffs in their individual capacity. Moreover, as members of W&D, they were authorized agents of the company and acts they undertook that were related to W&D's business bound the company. *See* Conn. Gen. Stat. §34-130(a) ("[E]very member is an agent of the limited liability company for the purpose of its business or affairs, and the act of any member . . . for apparently carrying on in the usual way the business or affairs of the limited liability company . . . binds the limited liability company, unless the member so acting has, in fact, no authority to act for the [ ] company in the particular matter and the person with whom he is dealing has knowledge of the fact that the member has no such authority.") Accordingly, the record indicates that W&D, not its individual members, was party to the Plaintiffs' employment contracts.

Individual members of a limited liability company are not personally liable for the company's acts. *See Campisano v. Nardi,* 212 Conn. 282, 288 (1989) ("[A] fundamental

15

attribute of the corporate form is that it shields the shareholders, directors, and officers from personal liability."); *see also Naples v. Keystone Bldg. and Dev. Corp.,* 295 Conn. 214, 231 (2010) (applying the same principle to limited liability companies and their members); Conn. Gen. Stat. §34-133(a) ("[A] person who is a member or manager of a limited liability company is not liable, solely by reason of being a member or manager . . . for a debt, obligation or liability of the limited liability company, whether arising in contract, tort or otherwise."). Thus, to justify holding W&D's individual members liable for acts of the company, including Plaintiffs' employment contracts, Plaintiffs must show that the Court should "disregard the fiction of a separate legal entity" by showing entitlement to "pierce the corporate veil." *See Naples,* 295 Conn. at 231-32 (citation omitted). The question of who constitutes an "employer" under the FLSA and Connecticut wage and hour laws is irrelevant to determining whether the corporate veil may be pierced. *See Powanda v. Inteplast Grp., Ltd.,* Civil No. 3:14cv846(JBA), 2015 WL 1525737, at *5 (D. Conn. Apr. 2, 2015) (rejecting plaintiff's argument that an entity that did not sign his employment contract was liable for its breach because that entity was an employer under Connecticut wage and hour laws).

"[T]he corporate veil is pierced only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." *Angelo Tomasso, Inc. v. Armor Constr. & Paving, Inc.,* 187 Conn. 544, 557 (1982) (citations omitted). Crucial to piercing the corporate veil is showing both that Defendants improperly used the corporate form and that declining to pierce the veil would "perpetrate a fraud or other injustice." *Naples,* 295 Conn. at 231-34. The Plaintiffs bear the burden of showing that they are entitled to pierce W&D's corporate veil. *See Season-All Indus., Inc. v. R.J. Grosso, Inc.,* 213 Conn. 486, 492 (1990) (citation omitted).

Connecticut courts have applied the "instrumentality" rule and "identity" rule to determine whether piercing the corporate veil is appropriate. *See Angelo Tomasso, Inc.,* 187 Conn. at 553-55; *see also KLM Indus., Inc. v. Tylutki,* 75 Conn. App. 27, 31 (Conn. App. Ct. 2003) (noting that the Connecticut Supreme Court has endorsed these two tests). Under the instrumentality rule, Plaintiffs must show that the individual or individuals that they seek to hold liable for the acts of a corporation (1) completely controlled the affairs of the corporation; (2) that this control was "used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention or plaintiff's legal rights"; and (3) the individual's breach of duty proximately caused the injury or loss at issue. *Angelo Tomasso, Inc.,* 197 Conn. at 553-54, 556-57.

Under the identity rule, Plaintiffs must "'show that there was such a unity of interest and ownership that the independence of the corporations [or the independence of the corporation from the individual] had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise.'" *Angelo Tomasso, Inc.,* 197 Conn. at 554 (citations omitted); *Naples,* 295 Conn. at 237 (noting that the identity rule is applicable to individuals as well as other corporations).

Plaintiffs have identified no evidence that can satisfy either test. W&D was a legitimate business, which owned and operated Kudeta. The record lacks any evidence of abuse of the corporate form by any of the individually named members that would justify piercing its corporate veil in this case. *See Morales,* 2010 WL 7865081, at *7 (in evaluating a motion for entry of default judgment, finding that plaintiffs had failed to show entitlement to pierce the

corporate veil where the record lacked "any significant indication of abuse of the corporate form" by either individually named Defendant). Because the Court cannot pierce W&D's corporate veil, summary judgment must be **GRANTED** for its five individually named members on the contract-based claims.

### D. Count Five: Unjust Enrichment and Quantum Meruit

Plaintiffs assert claims of unjust enrichment and quantum meruit against all Defendants, alleging that they provided benefits to the Defendants and were not properly compensated for them. Am. Compl. ¶¶92-95, ECF No. 45. Quantum meruit and unjust enrichment are doctrines of equitable relief, which enable recovery in the interest of justice and in the absence of a contract governing the same subject matter. *Gagne v. Vaccaro,* 255 Conn. 390, 401 (2001) (citations omitted); *see also Meaney v. Conn. Hosp. Assoc., Inc.,* 250 Conn. 500, 517-18 (1999) ("'It is often said that an express contract between the parties precludes recognition of an implied-in-law contract governing the same subject matter.'") (citations omitted); *Burns v. Koellmer,* 11 Conn. App. 375, 385 (1987) ("Unjust enrichment and quantum meruit are forms of the equitable remedy of restitution by which a plaintiff may recover the benefit conferred on a defendant in situations where no express contract has been entered into by the parties.") (citations omitted). Quantum meruit is based on an implied contract, typically derived from the value of a service or labor provided; unjust enrichment relates to a benefit of money or property conferred. *United Coastal Indus., Inc. v. Clearheart Constr. Co., Inc.,* 71 Conn. App. 506, 512-13 (2002).

Plaintiffs have provided no evidence that they seek relief for acts of the individually named members of W&D. *See* Conn. Gen. Stat. §34-133(a) ("[A] person who is a member or manager of a limited liability company is not liable, solely by reason of being a member or manager . . . for a debt, obligation or liability of the limited liability company, whether arising in

contract, tort or otherwise."). Accordingly, as with the contract-based claims above, to hold the individual members of W&D liable, Plaintiffs must show that they are entitled to pierce the corporate veil. For the reasons explained above, Plaintiffs fail to show such an entitlement, and summary judgment must be **GRANTED** on this claim as to all five individually named members of W&D.

## IV. CONCLUSION

For all of the foregoing reasons, Defendants' Motion for Summary Judgment, ECF No. 41, is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is granted with respect to Christina Tan, Doug Mcshane, Albert Wong, Elaine Chao, and Emily Chao on Counts Three, Four, and Five, alleging breach of contract and the covenant of good faith and fair dealing as well as claims of unjust enrichment and quantum meruit. Summary judgment is denied on Counts One and Two under the FLSA and Connecticut wage and hour law.

**SO ORDERED** this 20th day of November 2015, at Bridgeport, Connecticut.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge